### ARENA HANN, PLAINTIFF, v. ARTHUR FREESTONE ET AL., DEFENDANTS.

Submitted December 6, 1923—Decided March 4, 1924.

1. A special agent to sell real estate does not bind his principal, unless his authority be strictly pursued, and those dealing with him are chargeable with notice of its extent. A power to sell real estate presumptively authorizes a sale for money only.
2. When one receives the purchase price of real estate, a farm in this case, he cannot relieve himself from liability for the purchase price, by a manipulation of the title through a dummy, as a conduit, and causing to be conveyed an equity in property to an unauthorized agent of the owner in payment of such real estate in lieu of cash.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices MINTURN and BLACK.

For the plaintiff, *William C. Gebhardt & Son.*

For the defendant, *Rosenkrans & Rosenkrans.*

The opinion of the court was delivered by

BLACK, J. The trial in this case resulted in a verdict in favor of the plaintiff for $9,661 and against the defendant Arthur Freestone. A concise statement of facts, as disclosed by the record, will show not only the justice of the verdict rendered in favor of the plaintiff, but it will also indicate the legal principles that should be applied in testing the legality of the judgment entered on the verdict. The case is brought under review in this court by a rule to show cause obtained from the trial judge by the defendant Arthur Freestone. The essential facts are not in dispute. The plaintiff, Arena Hann, owned a farm of about one hundred and nineteen acres. The farm is located in Franklin township, Hunterdon county. The plaintiff and her husband, Charles W. Hann, were living on the farm, getting along in years. They desired to sell it for cash. On October 8th, 1921, Charles

W. Hann signed an authorization to John W. D. Green, the brother-in-law of the plaintiff, to sell the farm for $10,000. At that time John W. D. Green was seventy-five years of age and quite feeble. At his request his son Judson Green, one of the defendants, undertook to assist him in effecting a sale of the farm. They put the sale of the farm in the hands of Hanson & Sinclair, a firm of real estate agents in Paterson, N. J. Subsequently, Hanson & Sinclair took the sale of the farm up with Arthur Freestone, one of the defendants. He was also a real estate dealer in Paterson. As a result, Arthur Freestone went out to the farm and had an interview with Mr. and Mrs. Hann in reference to selling the farm. He testified: "*Q.* Did you inquire the price of the farm, and if so, what was said? *A.* Yes; I asked him what he was asking for it. *Q.* Who did you inquire of? *A.* Mr. Hann. *Q.* He took you about and showed the farm to you? *A.* Yes, he did. *Q.* What did he say they wanted for the farm? *A.* Twelve thousand dollars. *Q.* That included what? *A.* Everything; stock and crops and tools and implements. Two thousand dollars for the stock, &c. *Q.* And that the farm was to be ten thousand? *A.* Yes, sir."

After Mr. Freestone returned to Paterson, on October 11th, 1921, he entered into an agreement by Ward-Hamilton, Incorporated, with Judson Green individually, to convey to Green a property known as the Lincoln Silk Company encumbered by a $35,000 mortgage held by the Hamilton Trust Company, and as part of the consideration Green was to deliver a warranty deed for the farm. This is spoken of as an exchange of titles. It should be properly designated as a swindle of the plaintiff. At this time the title of the Lincoln Silk Mill property was in the receivers, Freestone had bid for the same at a sale. Thereafter, on October 24th, 1921, a deed was obtained from Mr. and Mrs. Hann for the farm by Green and Sinclair to Ward-Hamilton, Incorporated, as grantee, although Mrs. Hann says, "No, I didn't see that at all. It wasn't there," *i. e.*, the name of Ward-Hamilton, Incorporated, in the deed as grantee. Arthur Freestone, the defendant, further testified: "*Q.* Ward-Hamilton, Incorpo-

rated, is your company? *A.* Yes. *Q.* Did you make any proposal to him [*i. e.,* Mr. Judson Green] with regard to the farm? *A.* I suggested a trade. I told him I would make a trade with him under certain conditions. *Q.* As a result of that beginning, did you enter into a written agreement with him? *A.* Yes, sir." *Exhibit P* 13 is the written agreement between Ward-Hamilton, Incorporated, and Judson Green individually. "I suggested to Mr. Sinclair to have deed executed by Mr. and Mrs. Hann for the farm to Ward-Hamilton, Incorporated." The deal was carried through in accordance with the agreement of October 11th, 1921, *Exhibit P* 13. "After Ward-Hamilton, Incorporated, got title to the farm, I was at the farm twice, the first time I went with a prospective purchaser, a Mr. Schoe, and his father. He bought the farm later. I promised to let Mr. Hann and his wife stay two or three months longer. I decided to take the stock at $2,000. I sent a check to Charles W. Hann for $2,000, dated January 24th, 1922, in payment of the stock. I had the bill of sale for the stock prepared. At the time we exchanged the titles I paid for the crops and utensils with the company's check." "*Q.* You have the complete control of this Ward-Hamilton, Incorporated, haven't you? *A.* Yes, sir. I suggested that a deed should be obtained for the Hann farm. Out of the transaction of the conveyance of the Lincoln Silk Mill property, I got the farm subject to a $1,300 mortgage, $2,400 mortgage on the mill and $1,000 besides, dealing with Judson Green. From Mr. Schoe on the sale of the farm I received the equivalent of $10,000 for it. Eight thousand dollars for the farm." In a letter undated, presumptively January 24th, 1924, *Exhibit P* 5, Freestone wrote to Mr. Hann: "To-day I gave title of the farm to Mr. Aaron Schoe, the gentleman whom we talked about last Sunday."

At the time of the trial the plaintiff had never received anything for her farm from anybody. The jury, as stated, returned a verdict in favor of the plaintiff and against the defendant Arthur Freestone for $9,661.

The defense is that the conveyance by Ward-Hamilton, Incorporated, to Judson Green individually, of the equity

in the Lincoln Silk Mill property, was a payment for. the farm, that Freestone had never paid any consideration for plaintiff's farm and never was under any obligation to do so.

The meritorious question involved, therefore, is whether, under the evidence, the defendant Arthur Freestone has made himself liable for the purchase price of the farm, which he sold to Aaron Schoe and from whom he received the purchase price. It doubtless must be conceded that, if Freestone had taken the title to the farm in his own name, the law would imply an obligation on his part to pay the purchase price. How, then, either in morals or law, can the manipulation of the title by the defendant through Ward-Hamilton, Incorporated, as a mere conduit and dummy for the benefit of the defendant Freestone relieve him from legal responsibility? We think not. Because it is settled that a special agent does not bind his principal, unless his authority be strictly pursued, and those dealing with him are chargeable with notice of its extent. *Cooley* v. *Perrine,* 41 *N. J. L.* 322, 325,

In that case, Mr. Justice Dixon remarked, "A direction to sell therefore, nothing more appearing, would confer upon a special agent no authority beyond that of agreeing with the purchaser in regard to these component particulars."

So, one who claims through a special agent, takes the risk of his want of power. *Black* v. *Shreve,* 13 *N. J. Eq.* 455; *Scherer* v. *Post Office Building and Loan Asso.,* 91 *N. J. L.* 666.

A power to sell real estate presumptively authorizes a sale for money only. 2 *Corp. Jur.* 560, 618, §§ 209, 253.

Judson Green had no authority to accept anything in payment of the farm except cash, and this defendant Arthur Freestone knew, and if he did not know it, was bound at his peril to ascertain the facts. This is the theory on which the case was submitted to the jury by the trial court. The evidence of the defendant Arthur Freestone amply justifies the verdict that he was the real purchaser of the farm and in law responsible for the purchase price. To hold that a conveyance of property, of doubtful equity, to a third person,

and the manipulation of the title of the farm of the plaintiff by the defendant is a payment for the plaintiff's farm, would be neither good morals or sound law. So, we conclude, that the rule to show cause should be discharged, with costs. This disposes of the first five and fourteenth reasons. Reasons six to eight are inapplicable to the facts of the case. Reasons ten to twelve, admitting illegal evidence, call for no extended discussion. *Pamph. L.* 1912, *p.* 382, ¶ 27.

The same may be said of reasons nine and thirteen.

The rule is discharged, with costs.